**ORIGINAL** RP 8/15 APP



RECEIVED
AUG 18 2021
PRO SE OFFICE

United States District Court
Eastern District Court of New York

Theresa Skillings, Plaintiff
    — against —
The City of New York, Defendant

Amended Complaint
21 CV 3034

To the Eastern District of New York

The complaint of the plaintiff, Theresa Skillings, respectfully shows and alleges as follows:

1. The plaintiff, Theresa Skillings 187-01 Ludlum Avenue, St. Albans, N.Y 11412

2. The defendant, The City of New York, New York City Law Department, Office of the Corporation Counsel, 100 Church Street, New York, N.Y. 10007

3. The City of New York's agency is The Administration for Children's Services (ACS)

4. The jurisdiction of this Court is involved under 28 U.S.C. section 1331, as the case involves the 14th Amendment of the U.S. Constitution; ADA and IDEA

5. The plaintiff, Ms. Skillings had moved out of state and was visiting New York to attend to some personal business when things transpired.

6. On or about October 20, 2015, a caseworker from the Administration for Children's Services came by the residence of Ms. Skillings' relatives where Ms. Skillings was visiting. The caseworker stated an anonymous call was made that Ms. Skillings' child was not registered for school.

7. Ms. Skillings explained to the ACS worker that the issue was really a domestic violence matter, and that her former partner had made the call after an altercation. The call was motivated not out of concern for the child, but rather as a way to further harass Ms. Skillings.

8. Ms. Skillings' former partner also admitted to Ms. Skillings that he called ACS because he "wanted to get back" at her after the altercation.

9. Although Ms. Skillings informed ACS of the domestic violence, the ACS worker fixated on the plaintiff's child having a developmental disability and did not consider domestic violence as the significant factor.

10. In November 2015, the Administration for Children's Services brought a case against Ms. Skillings in which she was charged with educational neglect

11. Ms. Skillings subsequently had her child removed from her custody even though the child was not harmed, was not in danger or imminent risk

12. The City's agency failed to make reasonable efforts to avoid the child's removal from Ms. Skillings' custody as mandated.

13. ACS did not offer Preventive Services which would have preserved the mother-child relationship and eliminated having to go to Family Court.

14. Considering the allegation of educational neglect, Ms. Skillings has been subjected to a variety of court orders which are unjust, excessive and punitive.

15. The City's agency was negligent in arranging visits for Ms. Skillings and her child. Ms Skillings was not allowed to spend any time with her child for a month following the removal

16. The City's agency placed the child with the former partner without conducting a thorough assessment of his living situation prior to this placement.

17. ACS failed to verify the actual living conditions of the former partner. He and the child were living in a rooming house with another male resident with a criminal record. The child was there at least a month before this was made known to the court.

18    ACS then removed the child from the former partner, and placed the child with a relative, when the child should have been returned to her mother, the plaintiff.

19    This placement with the relative in 2015 was unjustified and unnecessary; and it was suppose to be "temporary". However the placement continued for more than 5 years.

20    During this placement, ACS allowed the child to sleep in the relative's room, and in the same bed as the relative for years until 2019.

21    Ms. Skillings' parental rights were never terminated. However ACS gave the decision making of the child's education and medical care to the relative.

22    The City's agency also failed to develop a visitation plan for Ms. Skillings during the time her child was placed with the relative.

23    ACS failed to notify Ms. Skillings of any service planning conferences.

24    The City's agency failed to develop a service plan with Ms. Skillings that she agreed to and signed.

25    After being removed from Ms. Skillings' care, the child was frequently ill with colds and infections. One time it become so serious that the child had to be hospitalized

in the intensive care unit in March 2016. During a visit to the hospital, Ms Skillings was told by hospital staff to leave her child's bedside due to the restraining order, which was quite devastating to Ms. Skillings.

26. The City's agency is required to have families complete services that pertain to the reason for ACS involvement. In Ms. Skillings case, the charge was educational neglect due to her child not registered for school. Although the child has been attending school regularly, ACS has required the family to participate in services that are unrelated.

27. ACS failed to abide by the verbal agreement with Ms. Skillings to return her child to her custody after completion of the mental health evaluation in June 2016.

28. Ms. Skillings was required to take parenting classes specifically for Special Needs children. However the problem was not a parenting issue for Ms. Skillings; it was due to domestic violence.

29. ACS has also required the family to participate in services only because the child has a disability. This is discriminatory.

30. ACS has required the family to obtain services from a specific OPWDD agency, and denied Ms. Skillings the right to choose an agency in 2019.

31. Ms. Skillings was then required in January 2021 to change

OPWDD agencies. Due to circumstances beyond Ms. Skillings' control, there was a delay in this occurring. However because of this Ms Skillings' child was removed from her custody again in May 2021.

32. The City's agency has interfered with Ms. Skillings' parental right to make educational decisions for her child.

33. ACS has been determining the child's education during the corona virus pandemic, by requiring Ms. Skillings' child to attend 'in-person' which places the child at risk.

34. Because ACS is requiring Ms. Skillings' child to attend school 'in-person' the child is required to have COVID testing although she was deemed Exempt from taking this test due to her disability.

35. ACS has decided which school Ms. Skillings' child will attend; and Ms Skillings was court ordered not to change schools in April 2021

36. The April 2021 Court Order also does not take into account Ms. Skillings' history of domestic violence. ACS has given more consideration for Ms. Skillings' former partner, when their obligation is to Ms. Skillings as this is an ACS case.

37 ACS has subjected Ms. Skillings to an unnecessary, lengthy and drawn out court process.

38. After more than 5 years, ACS had only 'trial discharged' the child to Ms. Skillings in January 2021, which is an excessive amount of time.

39. The City's agency has failed to close Ms. Skillings' case which has exceeded the typical length of time by more than 2.5 times

40. ACS has failed to state <u>when</u> the case will close.

41. Ms. Skillings is at increased risk of termination of her parental rights due to ACS' '15/22 Rule'. Ms. Skillings does not want this to happen!

42. Although Ms. Skillings has contacted ACS' management to report problems with the case; ACS has not taken action to rectify this.

43. ACS failed to notify Ms. Skillings of an emergency hearing in May 2021 in which child neglect was alleged.

44. Ms. Skillings found out about the emergency hearing only after her child did not return home from school as expected. This was traumatic for Ms. Skillings, as she had no idea of what happened. Ms. Skilling was later informed that her child was removed at school, when Ms. Skillings should have been notified prior to this.

45. Ms. Skillings' child was removed from her custody and again placed with the relative, who is again in charge of the child's education and care. The child is again sleeping with the relative.

46. At the July 2021 Court hearing, Ms. Skillings' right to respond and defend herself against the most recent neglect allegations was not addressed. Rather than ACS discussing the matter that led to Ms Skillings' child's removal; instead the time was spent going over the child's visitation with the former partner.

47. The City's agency is mandated to provide assistance to children and families. However, because of their actions ACS has caused more harm to the child than Ms. Skillings allegedly did.

48. Ms. Skillings' child has spent half of her life in this system. A system that was not intended to be used this way. The child has experienced more confusion, frustration and is more apt to outbursts; because the child is caught in a situation she does not understand (such as being removed from her mother's care, or having to undergo COVID testing). Also in March 2021 ACS subjected the child to a random "body check", wherein the child was required to strip down to her underwear. To conduct this search, the ACS worker entered Ms. Skillings' home when the agency is not allowed to do this during the pandemic.

49. Due to ACS' actions, Ms. Skillings has been made to suffer as she has experienced the trauma of having her child removed, not once but twice. In addition there is the chronic threat of having her parental rights severed. ACS' mismanagement has contributed to significant mental anguish, stress, and needless aggravation for Ms. Skillings.

50. The City's agency has had little regard for Ms. Skillings and this case; as ACS is obligated to provide assistance with the least disruption to families.

51. Ms. Skillings' separation from her child, the ACS monitoring and supervision of mother and child has negatively impacted the mother-child bond and relationship; and has been a source of stress and conflict between Ms. Skillings and her relatives due to the allegations and the requirements of the court. This entire situation has been a living nightmare!

52. Due to ACS' neglect charges, Ms Skillings now has a record with the State Central Register of Child Abuse and Maltreatment which damages Ms. Skillings' good name and reputation; limits employment options as this record remains in their system for many years.

53. The City's agency has violated a number of Federal and State civil rights laws. Please review the Plaintiff's Brief.

54. The Defendant's agency, ACS' actions were and continue to be unlawful, discriminatory; and an abuse and misuse

of power and authority. Considering the circumstances, this case was blown well out of proportion; and has resulted in significant disruption and turmoil in Ms. Skillings' life, her child's life, as well as their family.

55. By reason of the facts and circumstances stated above, the Plaintiff, Ms. Skillings is bringing a civil action against the Defendant, the City of New York. Ms. Skillings requests the immediate release and return of the child K.S. to the full, sole and legal custody of her mother, Theresa Skillings. The Plaintiff requests the immediate dismissal of all charges against her, and that this ACS case be closed. Plaintiff requests that all ACS supervision and involvement cease; all case records expunged; and that the Plaintiff be awarded punitive damages of Forty-Nine million dollars $\frac{00}{100}$.

Wherefore, Plaintiff demands judgment against the Defendant in the amount of Forty-Nine million dollars $\frac{00}{100}$, plus Interest from October 20, 2015; together with any other relief the Court finds to be just and proper.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: 1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; 2) is supported by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law;

3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, and 4) the complaint otherwise complies with the requirements of Rule 11.

Date of signing  August 17, 2021

Signature of Plaintiff
Printed Name of Plaintiff        *Theresa Skillings*
                                 Theresa Skillings


Theresa Skillings declares under penalty of perjury that the foregoing is true and correct [ 28 U.S.C. section 1746 ] I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

                                 *Theresa Skillings*
                                 Theresa Skillings

11

# In Support of Order to Show Cause for Preliminary Injunction

United States District Court
Eastern District of New York

Theresa Skillings
    – against –
The City of New York

Affirmation

21 cv 3034

State of New York
County of Queens

    Theresa Skillings makes the following affirmation under the penalties of perjury:

    I, Theresa Skillings, as plaintiff in the above-entitled action, respectfully move this court to order defendants to show cause why they should not be enjoined from:

- violating the plaintiff's civil rights

- and why the Queens Family Court Orders of: April 21, 2021, May 25, 2021, June 4, 2021 and July 26, 2021 should not be rendered null and void in their entirety and the child K.S. returned to her mother's custody; until a final disposition on the merits

1

in the above-entitled action.

Unless this order is issued, I will suffer immediate and irreparable injury, loss and damage in that:

The Defendant's agency, the Administration for Children's Services (ACS) continue to violate Ms. Skillings' civil legal rights, has wrongfully removed Ms. Skillings' child from her custody when there was no imminent danger or risk to the child's life or safety. Ms. Skillings was denied the right to a timely hearing to dispute the allegations, and have her child returned to her custody.

Ms. Skillings writes this affirmation in support of her request for an Order to Show Cause that was filed 6/7/2021. This affirmation supplements the one that was filed in June, and takes into account the proceedings at Queens Family Court on July 26th. This proceeding was originally scheduled as a Permanency Hearing, however Ms. Skillings did not receive a copy of the Permanency Hearing Report that ACS is required to provide to respondents. Also this hearing was to address the emergency removal of Ms. Skillings' child in May. Thus this hearing was Ms. Skillings' opportunity and her right to defend herself against the allegations and have her child returned to her custody.

However this did not happen. Rather than address this significant issue, the hearing on July 26th centered around Ms. Skillings' former partner taking the child to California on a visit. When they already knew ahead of time that they were going to allow

the former partner to do this.

Ms. Skillings objected to the child leaving the state. The child has not been cared for by the former partner for any extended amount of time, beyond a few hours during the day on occassional visits. Ms Skillings has been the primary caregiver for the child who requires assistance with toileting and personal hygiene. Also the child attends school 12 months per year according to her IEP, and receives various services.

Ironically the child's education and services were the reason that ACS started this case. Also ironic is that they expressed concerns about the child experiencing changes in her life as the reason for her most recent removal from her mother.
Now, for some reason, it is acceptable for the child to miss school and services; and to travel by plane across the country to spend a week with the former partner who has not been providing consistent daily care for the child.

During the hearing, it was stated that the child "deserves a vacation". How was this determination made? The child has speech difficulties. She does not understand that other people are making these plans about her. There was expressed concern about the child deserving a vacation; while there is no concern about the child being removed from her mother, and the disruption that this causes.

This case is fraught with unpredictability, contradictions and hypocrisy. There is no concern with the child missing

3

school and services; and travelling away from home. Yet they remove Ms. Skillings' child due to changes in her environment, such as living in transitional housing that might affect her emotional state, but didn't.

Ms. Skillings was improperly denied the right to address the matter of her child's return, because the hearing was spent discussing the child's trip to California when they already decided this before the July 26th hearing. Prior to this ACS reportedly conducted a 'virtual home visit' of the former partner's residence in California, and the former partner bought plane tickets, as the child was scheduled to depart New York on August 2nd.

Ms. Skillings concerns about this as the child's mother were not even considered. What then was the purpose of the July 26th hearing? What was the point of this as it pertains to Ms. Skillings' ACS case? The hearing to determine the "emergency" removal of my child did not take place. The child's removal was unjustified and Ms. Skillings was denied the right to address this in a timely manner. ACS violated the law, as there was no neglect or emergency need for the child's removal.

In addition, no preventive services or assistance were offered to keep the child with her mother. ACS has preventive service programs. However these programs are suppose to be offered to Ms. Skillings before her child's removal as mandated. Also ACS has not said what it is they are requiring of

4

Ms. Skillings to have her child returned (i.e. a service plan).
Meanwhile, Ms Skillings has, on her own, completed a
number of parenting classes, workshops etc.
ACS' mismanagement has been occurring throughout this case
which is now nearly 6 years!
They spoke about my child deserving a vacation, when what
she deserves is that ACS complies with the law that is
meant to protect families. Therefore according to the law,
Ms. Skillings and her child have the right to stability and
normalcy in their lives; and closure of this case.


Although not addressed on July 26th, the issues at the
emergency hearing in May were about the child's "emotional
state" because of the recent changes such as the move to
transitional housing; changing the child's service provider;
changes with the child's school/class; the school's medication
consent form; the child's orthotics, etc.

The question is why do they presume to say that the child is
having problems with her "emotional state"? The child's speech
is limited; therefore she did not verbalize her feelings about
her emotional state. Prior to her recent removal, Ms Skillings
was with her child every day. When she and her child
moved to transitional housing, Ms. Skillings child did not
behave unusually or exhibited any distress.

There are social workers and case managers at the shelter.
They are trained professionals. They have spent time with

5

Ms. Skillings and her child, and they have not had any concerns about the child.

School officials are mandated reporters. After moving to transitional housing the child attended school regularly. If they observed something unusual about the child's behavior, school staff would have said something. They did not. In fact they said the child was doing fine.

The ACS caseworker had conducted several home visits at the shelter since February, and had observed the child. Also, it was during one of these home visits that the caseworker subjected my child to a "body check", where she had to strip down to her underwear and pull up her shirt. The only other time I've witnessed this was years ago, in the very beginning of the case, and even then my child didn't need to get undressed. Not only that, since the public health crisis, caseworkers are not suppose to enter the home. Visits are conducted at the front door. However the caseworker did this search in the home.

Have there been changes? Yes there have, which is part of life; There are going to be changes. However these are things that were not only long overdue (as this case is 5+ years), but necessary. My child and I need to re-establish our own household. Something that is normal and to be expected. Prior to this case, we had our own residence. And for years, since the case began, I've requested housing from ACS. The caseworker said that ACS does not have housing assistance, even though

6

ACS has a housing office. The worker said that when my child was released to me, that we would have to seek housing through PATH, the City's shelter system. So that is what I did after my child was returned to me. I don't know why this is viewed as an issue. The ACS worker was aware of this and had referred me to PATH. Also, my child and I need our own housing in general because where we stayed at was not our home, it's overcrowded (as there are multiple people living in a single family 3 bedroom); lack of privacy, etc.

I'm trying to plan for the future. I don't see why there would be a problem with that. My child is becoming a teenager, and needs her own space. For years she was sleeping in the guardian's room, and in the same bed as the guardian. And now, my child is again in the guardian's room and bed. This room is on the 2nd floor. The bed is by a window that has no window guard. Why would this be acceptable for a disabled child in foster care?

The transitional housing residence is family oriented, and families are screened prior to being placed. My child and I had our own unit with private kitchen and bathroom. In addition there are resources to help families obtain permanent housing.

Going to transitional housing was a change for the better. Unfortunately there is a bias and negative stigma associated

with transitional housing when there shouldn't be.
Also if ACS considered lack of housing as a barrier for
my child's return, they are required to provide
assistance with housing; and should have been ordered to
do this rather than remove my child.

They expressed concern about changes to my child's school
and teacher. However that is exactly what happened
this summer. Due to construction at the previous school (177Q),
my child's school placement is at a new location and with
a new teacher. Yet there was no expressed concern about
her emotional state. By all accounts my child is doing fine.
So their so-called concern over changes affecting her emotional
state was unfounded. They have the audacity to say they
have concerns about my child's emotional state. If that was
the case what was the rationale for removing a child from her
mother, the person who had been providing consistent love and
care for her child's daily needs with no problems.
When they make changes such as remove my child without
warning, when it wasn't an emergency and the situation
didn't require it. It is not viewed as a problem when it is.
This is very disruptive to my family. It is also a double
standard, and a bias. My child should be returned to
her mother.

With regard to the transfer to another agency, I signed the
necessary consent forms in March which allowed ACA to contact
Tri County to transfer my child's case. However despite
ACA's attempts to get the case transferred in a timely

manner; as well as the caseworker contacting Tri County to inquire about the transfer, the case was not transferred until June when there was no reason for the delay. Tri County's lack of responsiveness to their clients was a significant reason why I wanted to change agencies. I did what I was required to do in this situation, yet I'm being blamed when I shouldn't be held responsible for Tri County's unprofessionalism.

Since the transfer the relative has been in contact with ACA. She requested to have a home attendant to care for my child. The relative was given care and custody of my child when this is questionable. The relative who is now in her 60's, has a medical condition for which she receives government assistance due to her inability to work. She used to work as a nurse taking care of patients and she is no longer capable of doing this. Since she qualifies for disability, how then is the relative expected to fulfill the responsibilities to the child? When my child was with me, I had no problem caring for my child and making sure she went to school. However, now the relative is requesting an aide, when I, the child's mother have been taking care of my child myself without the need for additional help.

Other concerns were the medication form and orthotics. The medication form does not pertain to my child because she does not have a serious medical condition or have severe life threatening allergic reactions which require immediate medical treatment. My child is in good health and occasionally has mild symptom from seasonal allergies for which she takes over-the-

counter medicine as needed. The doctor does not have her on prescribed medication. I did not refuse to sign the form, I did not talk to anyone about it. The form was sent home in her backpack, like all other notices. As it did not pertain to my child, it was not signed. This form should not have been an issue, and no reason to remove my child.

With regard to the orthotics, they are arch supports. For years ACS gave control of the childs health care to the relative. My child had a pair of orthotics / arch supports that she outgrew. About a year ago the relative took the child to get fitted for a new pair, however they weren't the correct fit. The relative said she had to re-order them. That was in the Fall of 2020. The relative had not said anything else to me about them It wasn't until it was brought up in court in May 2021, that the child was not wearing them. My child first pair of orthotics she wore regularly. To my knowledge the new pair were on order. I didn't intentionally not put them on her. I didn't receive the new pair from the relative. Since my child was placed with the relative in May, I have been visiting her regularly, and not once have I seen her wearing these orthotics! Also my child is able to walk and get around without them.

If there were concerns about my child a proper investigation should have been conducted first. All issues should have been sorted out and each party should have had the opportunity to clarify the facts before my child was removed. And even if ACS thought there were issues, they are suppose to provide assistance; Give families the opportunity to address these

issues first, before children are removed. It wasn't an emergency situation.

I love my child, and as I said, I have no problem taking care of her. I happily care for my child. This was something I did every day, and should have been supported in doing rather having her removed. My child should be returned to her mother.

Due to the above information, there was not sufficient cause to remove my child; and the current living situation of the child with the relative is unsuitable.

Therefore Ms. Skillings requests that the Queens Family Court orders issued on or about April 21, 2021, May 25, 2021, June 4, 2021 and July 26, 2021 be rescinded and that the child K.S. be returned to her mother, Ms. Skillings' custody; and that the ACS case be closed.

The plaintiff requests an order for a preliminary injunction because ACS has been negligent in managing this case, which is demonstrated by the recent removal of Ms. Skillings' child from her custody without notice of the hearing, and when there was no danger or risk to the child. The agency committed a number of errors and as a result has caused significant disruption for Ms. Skillings and her family that continue to affect Ms. Skillings at present, as this case is still ongoing and has not been resolved. There is also the matter of the '15/22 Rule' which gives ACS the authority to terminate a parent's rights

if the child has been remanded for at least 15 months. As this case has gone well beyond this; and given ACS' discriminatory actions, disregard for following mandates, and violating the family's legal rights, Ms. Skillings is justifiably concerned about this and must not wait any longer. Please review the Brief with Exhibits [Rule 65 (a)(1) Federal Rules of Civil Procedure]

As can be seen from the foregoing. I have no adequate remedy at law. This motion has been brought by order to show cause.

A previous request for this relief has been made and is pending [Local Rule 6.1 (d)].

Wherefore, I respectfully request that the Court grant the within relief as well as such other and further relief that may be just and proper.

I declare under penalty of perjury that the foregoing is true and correct [28 U.S.C. section 1746].

Dated: August 18, 2021

Theresa Skillings
Theresa Skillings

12