UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THERESA SKILLINGS,

                          Plaintiff,

        -against-

CITY OF NEW YORK,

                        Defendant.
-------------------------------------------------------------X

**REPORT & RECCOMENDATION**
**21 CV 3034 (DG)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff Theresa Skillings brings this *pro se* action alleging defendant violated her civil rights under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA") and the Individuals with Disabilities Education Act ("IDEA").[1] Plaintiff seeks declaratory and injunctive relief, as well as punitive damages. Defendant moves to dismiss plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. Plaintiff moves for leave to file a second amended complaint.

The Honorable Diane Gujarati referred the motions to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that defendant's motion should be granted, and plaintiff's Amended Complaint should be dismissed without prejudice for lack of subject matter jurisdiction. Plaintiff's motion for leave to amend should be denied.

## BACKGROUND

Plaintiff has been in a lengthy and ongoing Family Court custody proceeding which has twice resulted in her daughter being removed from her care. The origins of the Family Court case

---

[1] Plaintiff cannot pursue claims on behalf her daughter. As a non-attorney *pro se* litigant, plaintiff is limited to pleading and conducting her own cases. Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998). It is well-established that "an individual who is not licensed as an attorney 'may not appear on another person's behalf in the other's cause.'" Machadio v. Apfel, 276 F.3d 103, 106 (2d Cir. 2002) (quoting Iannaccone, 142 F.3d at 558).

trace back to on or around October 20, 2015, when an Administration for Children's Services' ("ACS") caseworker—claiming to be acting on an anonymous tip that plaintiff's child was not registered at school—went to "the residence of [plaintiff's] relatives where [plaintiff] was visiting."[2] Am. Compl. ¶ 6. Plaintiff attempted to explain to the caseworker that the tip was retaliation and harassment by her "former partner" after the pair had an "altercation." Id. ¶ 7. Instead of addressing plaintiff's concerns regarding domestic violence, the caseworker "fixated" on "plaintiff's child having a developmental disability…." Id. ¶ 9.

In November 2015, ACS "brought a case against" plaintiff in Family Court, charging her with "educational neglect." Id. ¶ 10; see also Ngo Decl. Ex. A, ECF No. 23-1. Plaintiff "subsequently had her child removed from her custody even though the child was not harmed, was not in danger or imminent risk." Id. ¶ 11. Plaintiff asserts "[t]he City's agency placed the child with the former partner…." Id. ¶ 16. The Family Court apparently ordered the child to be "temporarily released to the non-respondent father under ACS supervision…." Ngo Decl. Ex. B, ECF No. 23-2. "ACS then removed the child from the former partner, and placed the child with a relative, when the child should have been returned" to plaintiff. Am. Compl. ¶ 18. Plaintiff's child

---

[2] These facts are drawn from allegations in plaintiff's Amended Complaint, ECF No. 5, the factual allegations in her preliminary injunction motion, which was annexed to her Amended Complaint, and her opposition to defendant's request for a premotion conference, ECF No. 17. See Lopez v. Cipolini, 136 F. Supp. 3d 570, 579 (S.D.N.Y. 2015) ("In deciding a motion to dismiss a pro se complaint, however, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint[.]") (internal quotation marks omitted).

The Court additionally takes judicial notice of relevant Family Court decisions and documents which defendant annexed to the motion to dismiss, ECF Nos. 23–1 – 23-7. See Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (internal quotation marks omitted); Davis v. Whillheim, No. 17-CV-5793, 2019 WL 935214, at *6 (S.D.N.Y. Feb. 26, 2019) ("In addition, the Court takes judicial notice of publicly available filings, orders, and appeals in the Family Court system. These include additional Family Court orders….").

Finally, the Court references the assigned ECF page numbers of the parties' documents throughout this report.

was released to this relative, Carilyn Skillings, under ACS supervision.[3] Ngo Decl. Ex. C, ECF No. 23-3. On May 18, 2017, the Family Court entered a finding of neglect against plaintiff. Ngo Decl. Ex. D, ECF No. 23-4 at 6. One day later, the Family Court issued an "Order of Disposition" placing plaintiff's child with Carilyn Skillings under the supervision of ACS through the next permanency hearing. Id. at 8. The Court also ordered plaintiff to remain under "supervision" and directed her to, among other things, "[e]nroll in and successfully complete a parenting class for children with special needs." Id.

Plaintiff alleges the Family Court process was replete with failures that caused her harm.[4] Plaintiff alleges that ACS ignored her claims regarding domestic violence and removed her daughter even though she was not endangered or at risk, am. compl. ¶¶ 9, 11, that the City failed to conduct a "thorough assessment" of plaintiff's former partner's living conditions, id. ¶¶ 16-17, and that plaintiff's child was not properly cared for by her relative, which led to "frequent[] ill[nes,] colds and infections" that once warranted her daughter's hospitalization. Id. ¶¶ 20, 25. According to plaintiff, ACS "required the family to participate in services only because the child has a disability[,]" id. ¶ 29, and failed to develop an appropriate service plan for her as required. Id. ¶¶ 24, 26. Between 2016 and 2017, plaintiff filed three lawsuits in Queens County Supreme Court relating to the Family Court proceeding; all were dismissed.[5] ECF No. 17 at 4.

---

[3] "Carilyn Skillings" is spelled as "Carolyn Skillings" in some Family Court documents. The Court uses the former spelling, which plaintiff asserts is correct. ECF No. 1-2 at 23.

[4] These harms include the trauma of having a child removed twice, am. compl. ¶ 49, the "chronic threat of having her parental rights severed," id., and that plaintiff is now on the state's child abuse and maltreatment registry, which "damages" her "good name and reputation; limits employment options…." id. ¶ 52.

[5] Plaintiff references the three actions in her opposition papers, although she only identifies them by partial index numbers. ECF No. 17 at 4. Defendant cites the cases: Skillings v. Administration for Children's Services, Index No. 7066/2016 ("Skillings I"); Skillings v. City of New York, Index No. 3682/2017 ("Skillings II"); Skillings v. City of New York, Index No. 10955/2017 ("Skillings III"). Def's Mem. at 4-5. Based on these prior actions, defendant seeks dismissal of plaintiff's Amended Complaint, arguing that her claims are barred by the doctrines of *res judicata* and issue preclusion. Id. at 13. Defendant fails to make the requisite showing to warrant dismissal on either ground. As a

In January 2021, plaintiff's child was returned to her pursuant to a Family Court order as part of a "trial discharge[.]" Am. Compl. ¶ 38; Ngo Decl. Ex. E, ECF No. 23-5. In April 2021, the Family Court prohibited plaintiff from changing her child's school, even though that meant plaintiff's child would be required to attend in-person classes which concerned plaintiff because of the risk of contracting COVID-19. Am. Compl. ¶¶ 34-35. The trial discharge ended in May 2021, when plaintiff's child was "removed from her custody" following a Family Court hearing where "child neglect was alleged."[6] Id.  ¶¶ 31, 43. Plaintiff asserts ACS "failed to notify" her of this hearing, learning of it only when "her child did not return home from school as expected."[7] Id. ¶¶ 43-44. Plaintiff's child was again placed in the care of Carilyn Skillings through the next permanency hearing, then scheduled for July 26, 2021.[8] See Ngo Decl. Ex. G, ECF No. 23-7. A permanency planning hearing is apparently next scheduled for May 9, 2023 at 9:00 a.m. in Queens Family Court.[9] According to plaintiff "ACS currently has custody of [her] child, although she is 'paroled' to" Carilyn Skillings. ECF No. 17 at 5.

---

threshold matter, defendant characterizes, but has not provided, copies of the prior unreported decisions in Skillings I and Skillings II.

Defendant cannot rely on the Appellate Division's decision from June 2019 in Skillings III to bar plaintiff's case here. The Appellate Division in Skillings III considered whether issue preclusion barred plaintiff from litigating claims related to her Family Court case in New York State Supreme Court given the dismissal of Skillings I. Answering in the affirmative, the Appellate Division noted that Skillings I was dismissed (in their words) "on the basis, among others, that the allegations in the complaint could not properly be asserted in an action before the Supreme Court." Skillings v. City of New York, 173 A.D.3d 799, 800 (App. Div. 2d Dep't 2019). It is not clear that that the matter was decided on the merits or that the instant claims were actually litigated in the prior action.

[6] Plaintiff asserts the removal occurred because there was a "delay" in obtaining services from a "specific" Office for People With Developmental Disabilities ("OPWDD") mandated by ACS. Am. Compl. ¶ 31.

[7] An Order to Show Cause signed by Family Court Judge Joan L. Piccirillo dated May 21, 2021 directs plaintiff to show cause by May 25, 2021 why her child should not be released to Carilyn Skillings. Ngo Decl. Ex. F, ECF No. 23-6 at 2-3. The Order directs service of the order and all supporting papers on plaintiff's counsel in her Family Court case. Id. at 3.

[8] Plaintiff alleges she was "denied the right to a timely hearing to dispute the allegations, and have her child returned to her custody." ECF No. 5 at 13.

[9] New York State Unified Court System, https://iapps.courts.state.ny.us/fcasfamily/File (last visited January 16, 2023).

Plaintiff seeks "the immediate release and return of" her child to her "full, sole and legal custody…." Am. Compl. ¶ 55 Plaintiff further "requests the immediate dismissal of all charges against her, and that this ACS case be closed."[10] Id. Finally, plaintiff asks this Court to order "all ACS supervision and involvement [regarding her child] cease; all case records expunged; and that [plaintiff] be awarded [$49 million in] punitive damages…." Id.

## PROCEDURAL HISTORY

Plaintiff commenced this *pro se* action on June 3, 2021. ECF No. 1. On August 18, 2021, plaintiff filed an Amended Complaint and requested preliminary injunctive relief. ECF No. 5. Preliminary injunctive relief was denied on September 10, 2021. ECF No. 7. Defendant requested a premotion conference to dismiss the Amended Complaint on November 29, 2021, ECF No. 13, which plaintiff opposed.[11] ECF No 17. Defendant timely filed the fully briefed instant motion to dismiss on March 31, 2022. ECF Nos. 21-24. Plaintiff's opposition incorporated her letter opposing defendant's premotion conference request. ECF No. 20. On July 28, 2022, plaintiff filed a second amended complaint. ECF No. 26. The Court considers this as plaintiff's request for leave to file a second amended complaint. Judge Gujarati referred both motions to me for a Report and Recommendation.

## DISCUSSION

### I.    Standard of Review

The standards for a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are

---

[10] Plaintiff's preliminary injunction explicitly requests this Court to declare "null and void" the Queens Family Court Orders from April 21, 2021, May 25, 2021, June 4, 2021 and July 26, 2021. ECF No. 5 at 12.

[11] Plaintiff's opposition argued that defendant admitted the allegations in the Amended Complaint by filing a motion to dismiss, rather than an answer. ECF No. 17 at 1-2. This argument is without merit. A defendant may move to dismiss complaint under Federal Rule of Civil Procedure 12(b) in lieu of filing an answer.

substantively identical.   Moore v. PaineWebber, Inc., 189 F.3d 165, 169 n.3 (2d Cir. 1999). However, on a motion to dismiss under 12(b)(1), the party invoking the court's jurisdiction bears the burden of proof to show that subject matter jurisdiction exists, while the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)); McCray v. Lee, No. 16-CV-1730, 2017 WL 2275024, at *2 (S.D.N.Y. May 23, 2017).[12] A case must be dismissed for lack of subject matter jurisdiction when the Court "lacks the statutory or constitutional power to adjudicate it." Makarova, 201 F.3d at 113 (citing (Fed. R. Civ. P. 12(b)(1)). A plaintiff must prove the existence of subject matter jurisdiction by a preponderance of the evidence. Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) (citing Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002)).

A court reviewing a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); In re NYSE Specialists Sec. Litig., 503 F.3d 89, 91 (2d Cir. 2007); Chambers v. Time Warner Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Additionally, federal courts may take judicial notice of state court decisions. See Rates Tech. Inc. v. Speakeasy, Inc., 685 F.3d 163, 166 n.3 (2d Cir. 2012) (quoting Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) ("a court may take judicial notice of documents filed in other courts… to establish the fact of such litigation and related filings")).

---

[12] The Clerk of Court is directed to send plaintiff the attached copies of all the unreported cases cited herein.

To survive a motion to dismiss, a plaintiff must do more than allege facts that are "merely consistent with a defendant's liability," or "speculative," Twombly, 550 U.S. at 555; he must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). If a plaintiff does not "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570. When a plaintiff proceeds *pro se*, the Court has an obligation to "liberally construe" the complaint. Erickson v. Pardus, 55 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id. (quoting Estelle, 429 U.S. at 106).

## II.     Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction, and may only hear cases if there is diversity of citizenship or a federal question at issue." Baskerville v. Admin. for Children's Servs., No. 19-CV-602, 2020 WL 59826, at *1 (E.D.N.Y. Jan. 6, 2020) (internal quotation marks and citations omitted). In this case, plaintiff asks the Court to intervene in an ongoing Family Court proceeding concerning custody of her child. But federal courts must "respect […] state functions" and abstain from exercising jurisdiction over cases that, as here, would require the Court to review and unduly interfere with an ongoing state court proceeding. Younger v. Harris, 401 U.S. 37, 44 (1971). Similarly, "federal courts do not have the power to second guess state court determinations in domestic relations cases" because laws governing the family are historically primarily an area of state, not federal, concern. Baskerville, 2020 WL 59826, at *2.

A.  Younger Abstention

Plaintiff is clearly frustrated with the Family Court process and the Court sympathizes with plaintiff's painful separation from her child. However, plaintiff cannot obtain the relief she seeks in federal court. The case in Family Court regarding custody of plaintiff's daughter is ongoing. Plaintiff has the right to appeal dispositional orders and any final decision by the Family Court to the Appellate Division. See Fam. Ct. Act § 1112. This Court must abstain from considering her claims under the Younger abstention doctrine. Younger v. Harris, 401 U.S. at 44.

Federal courts are forbidden from unduly interfering with certain ongoing state proceedings. Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 100 (2d Cir. 2004); Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003). The Supreme Court clarified that courts should abstain under Younger in the following three circumstances: (1) state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts. Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72-7 (2013); Schorr v. DoPico, 686 F. App'x 34, 36 (2d Cir. 2017) (summary order).

A "state-initiated proceeding to gain custody of children allegedly abused by their parents" falls within the second category of civil enforcement proceedings. Sprint, 571 U.S. at 79 (citing Moore v. Sims, 442 U.S. 415, 419-420 (1979)); see also Davis v. Baldwin, 594 F. App'x 49, 51 (2d Cir. 2015) (summary order) (Citing Younger's second category and holding that "[b]ecause [plaintiff] does not dispute that the federal action here involved an ongoing, state-initiated custody proceeding, the proper basis for the district court's dismissal was the Younger abstention doctrine."). Similarly, requests for declaratory or injunctive relief that would "interfere with a '[s]tate court's ability to perform its judicial function in … [an ongoing] custody proceeding'" implicate Younger. Bukowski v. Spinner, 709 F. App'x 87, 88 (2d Cir. 2019) (summary order)

(quoting <u>Falco v. Justices of Matrimonial Parts of Supreme Ct. of Suffolk Cnty.</u>, 805 F. 3d 425, 427 (2d Cir. 2015)).

The Court considers three additional factors before applying <u>Younger</u> abstention: whether "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." <u>Spargo</u>, 351 F.3d at 75; <u>Falco</u>, 805 F. 3d at 427; <u>see</u> <u>Lowell v. Vermont Dep't of Child. & Fams.</u>, 835 F. App'x 637, 639 (2d Cir. 2020), as amended (Dec. 15, 2020) (summary order) ("[A]fter applying the categorical <u>Sprint</u> approach, this court will consider three additional, non-dispositive factors to determine whether abstention is appropriate.").

A case "falls squarely" within <u>Younger</u> abstention where the relief a plaintiff "seeks ultimately amounts to a collateral attack on New York Family Court orders issued in an ongoing custody proceeding…." <u>Chen Xu v. City of New York</u>, 2019 WL 5865343, at *4 (S.D.N.Y. Nov. 8, 2019) <u>appeal dismissed</u>, <u>mandamus denied sub nom</u>, <u>In re Chen Xu</u>, 2020 WL 2537646 (2d Cir. Feb. 27, 2020), <u>cert. denied</u>, 141 S. Ct. 610 (2020). Courts in this Circuit routinely apply <u>Younger</u> abstention and dismiss claims seeking relief that, if granted, would undermine an ongoing state court custody proceeding. <u>See</u> <u>Bukowski</u>, 709 F. App'x at 88 (finding <u>Younger</u> abstention "required" as to request for declaratory and injunctive relief that would interfere with ongoing state custody proceeding); <u>Stumpf v. Maywalt</u>, No. 21-CV-6248, 2022 WL 2062613, at *3 (W.D.N.Y. June 6, 2022) (<u>Younger</u> abstention applies to claims asking "the Court to declare [state custody proceedings] unconstitutional and to dismiss [them.]"); <u>Wrobleski v. City of New York</u>, 18-CV-8208, 2021 WL 4392548, at *4-5 (S.D.N.Y. Sept. 24, 2021) (<u>Younger</u> abstention applies to claims that plaintiff's rights were violated during an ongoing Family Court proceeding alleging fraud, collusion, and other wrongdoing by state and private actors where "[t]he remedies Plaintiff seeks

are precisely what the Younger doctrine forbids"); McIntosh v. White, 16-CV-6654, 2017 WL 1533539, at *3 (E.D.N.Y. Apr. 27, 2017) (holding the "Court must abstain from and dismiss Plaintiff's action" which alleged, among other things, negligence and neglect by ACS and asked the "Court to review and intervene in ongoing New York Family Court custody proceedings…"); Torres v. Gaines, 130 F. Supp. 3d 630, 636 (D. Conn. 2015) (abstaining from hearing "claims calling" an ongoing Family Court custody proceeding "into question").

This case meets all the conditions warranting Younger abstention. First, through styled as challenging unlawful conduct on the part of ACS, plaintiff's federal lawsuit asks this Court to dismiss what she describes as an "unnecessary, lengthy and drawn out [family] court process"[13] and to immediately restore her child to her custody. Am. Compl. ¶¶ 37, 55; ECF No. 17 at 6 ("The fact that [the Family Court proceeding] is still 'ongoing' in itself is the problem."). "Plaintiff is essentially asking the Court to review and intervene in ongoing New York Family Court custody proceeding" which "clearly implicates principles of abstention" under Younger. McIntosh, 2017 WL 1533539, at *3. While again the Court sympathizes with plaintiff, her claims are "an attempt to challenge [d]efendant['s] actions within and relating to [an] ongoing Family Court [p]roceeding" and therefore cannot be heard in Federal Court. Wrobleski, 2021 WL 4392548, at *4-5.

Second, "it hardly bears repeating that state courts have a paramount if not exclusive interest in child custody cases." Neustein v. Orbach, 732 F. Supp. 333, 341 (E.D.N.Y. 1990). One would be hard-pressed to imagine a federal court act which would interfere more "with core state court civil administrative processes, powers, and functions," Cavanaugh, 28 F. 4th at 434, than

---

[13] No final order of custody or guardianship has been issued in this matter. See N.Y. Fam. Ct. Act § 1089(a).

ordering the "immediate dismissal of all charges" in the Family Court proceeding, as plaintiff asks this Court to do. Am. Compl. ¶ 55.

Finally, Younger abstention "rests foursquare on the notion that, in the ordinary course, 'a state proceeding provides an adequate forum for the vindication of federal constitutional rights.'" Diamond "D" Const. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) (quoting Cullen v. Fliegner, 18 F.3d 96, 103 (2d Cir. 1994)). State courts are "fully competent to decide federal constitutional questions," Neustein, 732 F. Supp. at 342, and "nothing precludes [plaintiff] from raising these claims in a state appellate court." McKnight v. Middleton, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010), aff'd, 434 F. App'x 23 (2d Cir. 2011); see also Hidalgo v. New York, No. 11-CV-5074, 2011 WL 5838494, at *3 (E.D.N.Y. Nov. 21, 2011) (finding Family Court proceedings provide an "adequate forum" for the adjudication of federal constitutional claims). Plaintiff may appeal the Family Court orders in this matter. See Fam. Ct. Act § 1112 (appeals from an intermediate or final order in a case involving abuse or neglect may be taken as of right).

Although in Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 435 (1982) the Supreme Court recognized a narrow, bad faith exception to Younger abstention, there is no basis for an exception here. "To invoke this exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." Diamond "D" Const. Corp., 282 F.3d at 199. "The subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, this inquiry." Id. While plaintiff alleges that her former partner initially called ACS as an act of retaliation, Am. Compl. ¶¶ 6-10, and that the continued family court case constitutes "harassment" in and of itself, ECF No. 17 at 8, she does not plead facts to plausibly allege a subjectively held illegitimate motive for the Family Court proceedings. Diamond "D" Const. Corp., 282 F.3d at 199; see also Chen Xu,

2019 WL 5865343, at *4 (finding plaintiff failed to establish "bad faith" exception under similar circumstances). Indeed, plaintiff admits ACS began its investigation because of a tip alleging neglect, not out of retaliation or some other illegitimate motive. This Court must abstain from hearing plaintiff's claims.

B. Rooker-Feldman Doctrine

To the extent that plaintiff seeks review of final Family Court orders issued prior to the filing of this lawsuit, this Court also lacks subject matter jurisdiction to hear plaintiff's claims under the Rooker-Feldman doctrine. This doctrine arises from two cases, Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923) and D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983), which establish "the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state courts." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). The Supreme Court's decision in Exxon Mobile v. Saudi Basic Indus. Corp., narrowed application of Rooker-Feldman to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. 280, 284 (2005).

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invite district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced."

Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) (quoting Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d. Cir 2005)); see also Shung Cho v. City of New York, 910 F.3d 639, 645 (2d Cir. 2018) (reiterating the requirements of the Rooker-Feldman doctrine).

This Court lacks jurisdiction over plaintiff's complaint under Rooker-Feldman. Plaintiff complains of injuries caused by the state court's decisions and seeks review and rejection of the

Family Court orders. Plaintiff challenges her daughter's removal from her care in November 2015. Plaintiff's child was removed again on May 2021. These removals occurred pursuant to Family Court orders, see ECF Nos. 23-2; 23-3; 23-4, and prior to the filing of plaintiff's complaint on August 18, 2021. See J.R. ex rel. Blanchard v. City of New York, No. 11-CV-841, 2012 WL 5932816, at *4 (E.D.N.Y. Nov. 27, 2012) (finding plaintiff "lost in state court when the family court issued its order of disposition remanding custody of [the child] to ACS"). Plaintiff also challenges Family Court orders requiring her to attend a class for parents with special needs, which she alleges was disability discrimination.[14] Am. Compl. ¶¶ 28-29; See e.g. ECF No. 23-7 (Family Court order directing plaintiff to "[e]nroll in and successfully complete a parenting class for children with special needs").[15] The Family Court also prohibited plaintiff from changing her daughter's school. Am. Compl. ¶ 35. Those state court orders were all entered before plaintiff commenced the instant proceeding. Therefore, this Court lacks subject matter jurisdiction over plaintiff's complaint under the Rooker-Feldman doctrine.

C. Domestic Relations Abstention

The Court is further counseled to abstain from hearing this case because of the nature of plaintiff's claims: domestic relations is "an area of law that federal courts and Congress leave almost exclusively to state law and state courts." Khalid v. Sessions, 904 F.3d 129, 133 (2d Cir. 2018); see also Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) ("[W]hile rare instances arise in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue, in general it is appropriate for the federal courts to leave

---

[14] Article 10 of the Family Court Act authorizes a Family Court to place the respondent under the supervision of state protective agencies and to "set forth the terms and conditions of such supervision that" must be met. See N.Y. Fam. Ct. Act § 1057(b).

[15] In the event plaintiff completed this class, the Family Court order provides that plaintiff merely needs to "provide her certificate of completion to ACS." ECF No. 23-7 at 3.

delicate issues of domestic relations to the state courts") (internal citation omitted); see also Am. Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir. 1990) ("[F]ederal courts may properly abstain from adjudicating such actions in view of the greater interest and expertise of state courts in this field.").

This Court's consistent refusal to intervene in child custody cases, "is supported by the Supreme Court's longstanding recognition — in a non-diversity case involving a child custody dispute — that '[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.'" Deem v. DiMella-Deem, 941 F.3d 618, 624 (2d Cir. 2019) (quoting In re Burrus, 136 U.S. 586, 593–94 (1890)). "Accordingly, to the extent that [p]laintiff challenges the child custody results of the Family Court proceedings, this Court is without jurisdiction to review such matters." Washington v. Williams, No. 19-CV-289, 2019 WL 1876787, at *2 (E.D.N.Y. Apr. 26, 2019); Johnson v. Alma, No. 19-CV-8093, 2019 WL 5260824, at *2 (S.D.N.Y. Oct. 15, 2019) ("The gravamen of the complaint concerns Plaintiff's ongoing family court proceedings, which relate directly to the welfare of his minor stepdaughter and daughter. Therefore, the domestic relations exception applies, and the Court lacks subject-matter jurisdiction to consider those claims."); Ashmore v. New York, No. 12-CV-302, 2012 WL 2377403, at *2 (E.D.N.Y. June 25, 2012) (dismissing due process challenge to state court custody proceeding as barred by the domestic relations doctrine because if "this court were to allow the plaintiff to pursue this action, it would be forced to re-examine and re-interpret all the evidence brought before the state court in the custody proceedings") (internal quotation marks omitted).

Plaintiff's action "is a state domestic relations matter." Dyer v. Edwin Gould Foster Care Agency, 19–CV–531, 2019 WL 442150, *2 (E.D.N.Y. Feb. 4, 2019). Plaintiff asks this Court to

"wade into a domestic dispute and review state court custody determinations – a role that is wholly inappropriate for a federal court." Brown v. City of New York, No. 19-CV-108, 2019 WL 235642, at *2 (E.D.N.Y. Jan. 16, 2019); see also Jones-Bey v. Chen, No. 21-CV-6142, 2021 WL 4255056, at *4 (S.D.N.Y. Sept. 17, 2021) ("The Court construes Plaintiff's request that custody of her minor child be restored to her and that the Court direct ACS to cease its investigation of her family as a request for this Court to intervene in her child custody proceedings. This Court cannot consider those claims because of the domestic relations abstention doctrine.").

"Although the plaintiff styles some of [her] claims as raising constitutional issues, the allegations stem from an on-going state domestic relations matter and are thus outside this Court's jurisdiction." Baskerville, 2020 WL 59826, at *3 (quoting Perso v. Perso, No. 19-CV-2858, 2019 WL 4415399, at *3 (E.D.N.Y. Sep. 13, 2019)). The reason is simple: "characterization" of plaintiff's claims as raising constitutional issues "does not expand this Court's jurisdiction." Ates v. Altiner, 20-CV-1477, 2020 WL 3403021, at *4 (E.D.N.Y. June 19, 2020) (dismissing challenge to state court matrimonial and child custody proceedings which plaintiff had framed as a civil rights and RICO case); see also Chapman v. Maycock, No. 21-CV-4940, 2021 WL 6091749, at *3 (E.D.N.Y. Dec. 23, 2021) ("[A]ll the claims for which Plaintiff seeks relief, regardless of how they are framed, arise from the custody and support of his child, and thus his claims fall within the ambit of the domestic relations abstention doctrine."), appeal dismissed, 2022 WL 2915528 (2d Cir. June 9, 2022);  El-Shabazz v. Henry, No. 12-CV-5044, 2012 WL 5347824, at *3 (E.D.N.Y. Oct. 29, 2012) (finding plaintiff "may not use § 1983 as a vehicle to circumvent the domestic relations exception and re-litigate" an underlying child custody proceeding). Similarly, plaintiff cannot avoid domestic relations abstention simply by including a claim for money damages or characterizing her claims as brought under the IDEA or ADA. See Tait, 241 F. Supp. 3d 372, 377

("[A] plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages.") (internal quotation marks omitted).

Further, plaintiff fails to plausibly allege that she is being prevented "from receiving a full and fair determination in state court." Chapman, 2021 WL 6091749, at *4; Flores-Grgas v. N.Y.C. Admin. For Child. Servs., No. 21-CV-5912, 2021 WL 3501327, at *6 (S.D.N.Y. Aug. 9, 2021) (holding domestic-relations abstention warranted where plaintiffs "ask this Court to either vacate or overturn the Family Court's orders, or to otherwise intervene in child custody proceedings" without any suggestion "they were denied a full and fair hearing in the state courts"). Plaintiff's allegation that she did not receive notice of the May 2021 neglect hearing is insufficient. Am. Compl. ¶ 43.

### III.    Failure to State a Claim

Finally, even if the Court had subject matter jurisdiction over plaintiff's claims, plaintiff's Amended Complaint would be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Assuming plaintiff has plausibly alleged a constitutional violation here,[16]

---

[16] In addition to her civil rights claims, plaintiff alludes to the Americans with Disabilities Act (ADA) and to the Individuals with Disabilities Education Act (IDEA). Plaintiff fails to state a claim under either statute. Turning first to the IDEA, the Act guarantees that children with disabilities have access to a "free appropriate public education" that meets their needs, namely by ensuring school districts offer disabled students requisite services. See 20 USC § 1400(d)(1)(a). As this description should make clear, the statute is simply not the proper vehicle for plaintiff to challenge the Family Court's custody determinations. "[T]he IDEA only authorizes a private right of action with respect to a local educational authority's alleged failure to provide" a free appropriate public education. Y.D. v. New York City Department of Education, No. 14-CV-1137, 2016 WL 698139, at *5; see also M.H. v. New York City Dept. of Educ., 685 F.3d 217, 224-26 (2d Cir. 2012) (laying out the procedure for bringing a claim under the IDEA). "This cause of action is qualified, however, by a requirement that the plaintiff first exhaust the administrative processes provided for in the IDEA before bringing an action in district court." R.R. v. Greenwich Board of Educ, 21-CV-873, 2022 WL 1443979, at *2 (D. Conn. May 6, 2022). Here, plaintiff does not name the offending school district as a defendant and she does not allege she exhausted the administrative process for an IDEA suit.

Likewise, nowhere in plaintiff's Amended Complaint does plaintiff allege that she, herself, is a qualified individual with a disability such that she is covered by the ADA. The anti-discrimination provision of Title II of the ADA regarding access to public services provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To establish a claim under Title II, a plaintiff must demonstrate (1) that she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public

plaintiff's claims are time-barred and her Amended Complaint fails to allege that any injuries she experienced were caused by an officially adopted custom, policy, or practice of defendant City of New York. Therefore, if the Court had jurisdiction, defendant's motion to dismiss plaintiff's Amended Complaint for failure to state a claim would be granted.

A. Plaintiff's Claims are Time-Barred

Even if plaintiff could state a claim under § 1983, her claims regarding her child's initial removal in November 2015 are time-barred. Plaintiff needed to bring her § 1983 within three years of the date the claim accrued. Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) ("The statute of limitations for claims brought under Section 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law.") The limitations period begins to accrue on the date of the child's removal. Washington, 2019 WL 1876787, at *3; Brazley v. ACS, No. 16-CV-7138, 2017 WL 4621951, at *3 (E.D.N.Y Oct. 13, 2017) (holding that constitutional claims brought in 2016 arising from 2011 child custody removal would be time-barred); Sevilla v. Perez, No. 15-CV-3528, 2016 WL 5372792, at *3 (E.D.N.Y. Sept. 26, 2016) (concluding that the limitations period for plaintiff's "alleged injury, the removal of her children, […] begins to run on the date the children were removed"). Here, plaintiff's child was removed from her custody in November 2015 and she filed her § 1983 claim in federal court in August 2021. Therefore, even if the Court had jurisdiction, plaintiff's claims that defendant unlawfully removed her child in November 2015 would be time-barred.

---

entity; and (3) that such exclusion or discrimination was due to her disability." Tardif v. City of New York, 991 F.3d 394, 404 (2d Cir. 2021) (internal quotation marks omitted).

### B. No Municipal Liability

To establish a constitutional violation under § 1983, "a plaintiff must show that: (1) the defendants acted under color of state law; and (2) the defendants' actions resulted in a deprivation of plaintiff's constitutional rights." Bhatia v. Yale Sch. of Med., 347 F. App'x 663, 664–65 (2d Cir. Sept. 30, 2009) (summary order). To hold a municipal entity liable under § 1983—as plaintiff seeks to do here—a plaintiff must show that an unconstitutional policy or custom of the municipality caused the injury. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691 (1978); Friedman v. New York City Admin. for Children's Servs., 502 F. App'x 23, 27 (2d Cir. 2012). "In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights." Wrobleski, 2018 WL 10604749, at *4. "[I]t is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing." Johnson, 2019 WL 5260824, at *3. A Court may address whether a plaintiff has made the requisite under Monell before determining whether there is an underlying constitutional violation. Nicholson v. Scoppetta, 344 F.3d 154, 165 (2d Cir. 2003).

Here, while plaintiff's Amended Complaint includes a lengthy recitation of ACS's alleged wrongful actions throughout the custody case,[17] plaintiff fails to identify an officially adopted municipal policy, custom, or practice that violated her constitutional rights. Plaintiff's experience with ACS—however difficult and frustrating it may be for plaintiff—does not establish that the City had an officially adopted custom, policy or practice that caused the violation of plaintiff's

---

[17] With few exceptions, plaintiff's allegations are against the agency as a whole rather than against specific (even if anonymous or unidentified) caseworkers.

rights. Grullon v. Admin. for Children's Servs., No. 18-CV-3129, 2021 WL 981848, at *15 (S.D.N.Y. Mar. 16, 2021) (finding plaintiff fails to state a claim against the City where "[t]he essence of Plaintiff's claims is that his right to parent his daughter was violated based on facts that are idiosyncratic to his case."); Wrobleski, 2018 WL 10604749, at *4 (noting complaint alleging wrongful removal of child from custody does not establish municipal liability where it "challenges the actions of individuals who are involved in the family court proceedings" without linking those actions to the policy of a municipal defendant).

Plaintiff asserts that ACS "started this controversy when they did not properly investigate; and mismanaged this case." ECF No. 17 at 5; id. at 6 (ACS "did not offer preventative services to prevent removal as mandated."). Liberally construed, plaintiff may be trying to allege a "failure to train" theory of municipal liability. To support such a theory, plaintiff must plead facts sufficient to plausibly allege that the defendant municipality is liable "by reason of its deliberate indifference to a known custom or practice of its employees[.]" Nicholson, 344 F.3d at 166. "Thus, a plaintiff can prevail against a municipality by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012).

However, plaintiff's general assertions that: ACS "should" have notified her about an emergency hearing in May 2021, am. compl. ¶ 44; did not respond to her complaints about "problems" with the ACS case, id. ¶ 42; and is "required to provide assistance to families" prior to removing a child from custody but failed to do so in her case, ECF No. 17 at 8 do not plausibly "meet the pleading requirements for a failure to train municipal liability claim." Worrell v. City of New York, No. 12–CV–6151, 2014 WL 1224257, at *13 (E.D.N.Y. Mar. 24, 2014) (internal quotation marks omitted) (claim by plaintiff that ACS "routinely" conducts faulty investigations

is insufficient to state a claim for municipal liability under a failure to train theory). For all these reasons, even if this Court had subject matter jurisdiction to hear plaintiff's Amended Complaint, plaintiff's Amended Complaint fails to state a claim upon which relief can be granted against defendant.

### VI. Motion to Amend

Plaintiff's request to file the second amended complaint, ECF No. 26, (filed after the motion to dismiss was fully briefed) should be denied as futile. Federal Rule of Civil Procedure 15(a)(2) provides that the Court should freely give leave to amend "when justice so requires." "This is a 'liberal' and 'permissive' standard, and the only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'" Sacerdote v. New York Univ., 9 F.4th 95, 115 (2d Cir. 2021) (quoting Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015) While "[o]rdinarily, *pro se* plaintiffs are granted opportunities to amend their complaints freely[,] courts need not afford plaintiffs an opportunity to amend where it is clear that any attempt to amend the complaint would be futile." Kimmel v. New York State Assembly, No. 20-CV-1074, 2020 WL 6273975, at *3 (E.D.N.Y. Oct. 26, 2020) (citing Cruz v. Gomez, 202 F.3d 593, 597–98 (2d Cir. 2000)).

Here, plaintiff has already amended her complaint once. The proposed second amended complaint continues to seek federal court intervention in plaintiff's ongoing Family Court custody proceeding. Therefore, it does not—and indeed, cannot—cure the lack of jurisdiction in this case. Plaintiff's request to amend should be denied. See Dyer, 2019 WL 442150, at *2 (E.D.N.Y. Feb. 4, 2019) (denying leave to amend because "plaintiff's claims are strictly about state court matters, and amending the complaint would not cure that defect"); Ashmore v. New York, 12-CV-3032, 2012 WL 2377403, at *2 (E.D.N.Y. June 25, 2012) (denying leave to amend "where it is clear

from the face of the complaint that additional drafting could not cure the court's lack of subject matter jurisdiction"). As plaintiff has already filed an amended complaint, and having reviewed the proposed second amended complaint, the Court should deny plaintiff's motion for leave to amend as the proposed amendment would be futile.

## CONCLUSION

Accordingly, it is respectfully recommended that the Court should grant defendant's motion to dismiss for lack of subject matter jurisdiction and plaintiff's Amended Complaint should be dismissed without prejudice. Plaintiff's motion for leave to file a second amended complaint should be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: January 19, 2023
      Brooklyn, New York